UNITED STATES of America, Appellee,

v.

**Derrick Trelayne SPANN, a/k/a Kalan Kurney, Derrick Thomas and Kalin Andre Spann, Appellant.**

UNITED STATES of America, Appellee,

v.

**Horace Craig STEPHENS, Appellant.**

Nos. 92–3012, 92–3098.

United States Court of Appeals, District of Columbia Circuit.

Argued April 26, 1993.

Decided July 13, 1993.

Penny Marshal, Asst. Federal Public Defender, Washington, DC, argued the cause, for appellant Derrick Trelayne Spann. On brief, were A.J. Kramer, Public Defender, and James R. Holloway, Asst. Federal Public Defender, Washington, DC.

Joel F. Brenner, Washington, DC (appointed by this court) argued the cause, for appellant Horace Craig Stephens.

Peter H. White and Kenneth L. Wainstein, Asst. U.S. Attys., Washington, DC, argued the causes, for appellee. On brief, were Jay B. Stephens, U.S. Atty. at the time the briefs were filed, and John R. Fisher, Roy W. McLeese, III and David M. Zlotnick, Asst. U.S. Attys., Washington, DC.

Before WALD, HENDERSON and RANDOLPH, Circuit Judges.

Opinion for the court filed by Circuit Judge KAREN LeCRAFT HENDERSON.

Concurring opinion filed by Circuit Judge WALD.

KAREN LeCRAFT HENDERSON, Circuit Judge:

Appellants Derrick Trelayne Spann and Horace Craig Stephens were convicted, in separate trials, of possessing with intent to distribute cocaine base in violation of 21

U.S.C. § 841(a)(1) and (b)(1)(A)(iii).[1] Each appellant urges reversal on the grounds that (1) the jury was provided, and used to convict him, an improper verdict form which did not allow for a general verdict of "guilty" or "not guilty" and (2) statements the judge made to each jury, including a deadlock instruction during Spann's trial, coerced a guilty verdict. For the following reasons we affirm both appellants' convictions.

■■■ First, we address the appellants' common challenge to the verdict forms used for their convictions. The two challenged verdict forms are virtually identical, each requiring the jury to indicate "yes" or "no" following a statement that "[w]e, the Jury, unanimously find, as to the defendant listed [ ], that the Government has proved beyond a reasonable doubt each element" of the charged offense.[2] The appellants, characterizing the forms as "special" verdict forms, assert that by failing to expressly allow a verdict of "guilty" or "not guilty" the judge usurped the jury's role and violated the appellants' right to a "general" verdict form. Because neither appellant objected to the language of his verdict form at trial, we review the language only for plain error, *see United States v. Lancaster*, 968 F.2d 1250, 1254 (D.C.Cir.1992), and conclude there is none.

We have previously recognized a "[j]udicial distaste for 'special verdicts' in criminal cases result[ing] from a concern 'that the jury [will be] led to its conclusion [b]y a progression of questions each of which seems to require an answer unfavorable to the defendant.'" *United States v. North*, 910 F.2d 843, 910 (D.C.Cir.1990) (quoting *United States v. Desmond*, 670 F.2d 414, 419 (3d Cir.1982)). The forms at issue here, however, are not "special" verdict forms. They do not "guide the jury towards a guilty verdict by requiring them to find either the elements of the crime charged or a series of facts from which criminal activity would naturally be inferred." *North*, 910 F.2d at 911; *see also Manufacturers Hanover Trust Co. v. Drysdale Sec.*

*Corp.*, 801 F.2d 13, 26 (2d Cir.1986) ("The term 'special verdict' is a term of art, and properly speaking, refers only to special findings regarding factual issues that the court may ask the jury to resolve ... or perhaps mixed questions of law and fact, assuming applicable legal standards are charged.") (internal citations omitted). Rather, they require the jury to express its ultimate conclusion of guilt or innocence, albeit couched in terms of whether the government has proven the charged crimes beyond a reasonable doubt. *Cf. United States v. Gallishaw*, 428 F.2d 760, 764–66 (2d Cir.1970) (finding verdict form that summarized factual nature of charge and set out essential elements of crime charged was general, not special, verdict). We find nothing talismanic in the terms "guilty" and "not guilty" and their absence from a general criminal verdict form, while unusual, is not plain error warranting reversal.

■■■ Next we consider Stephens's and Spann's challenges to allegedly "coercive" statements the judge made to the juries that convicted them. First, Stephens objects to remarks made during presentation of his defense. Immediately before re-examination of his father, which preceded Stephens's own testimony, the judge informed the jury:

Ladies and gentlemen, we have a few questions of this witness in addition to those that were previously propounded to him. I don't know any more than you do what they are. But in any event, after that, there's one more defense witness, and then we will retire for you to have your lunch. The court has arranged for you to have your lunch at the expense of the United States. And right after lunch, the court will hear final arguments and you will hear final arguments from counsel. The court will then instruct you on the law to provide you a framework within which you will resolve and decide the facts in this case *and the return of your verdict, which I don't think will take you too long.* But, in any event, you'll have the instructions in

---

1. We have determined *sua sponte* to consolidate these two appeals because they present common legal issues. Fed.R.App.P. 3(b).

2. The two forms differ in only three respects: (1) the information in the captions, (2) the name of "the defendant listed below" and (3) the amount of cocaine base each charges was possessed.

writing after you hear them from me, along with written verdict form, which is already prepared. As I told you yesterday, *it's just a simple yes-or-no answer as to whether the government has proved its case, and I think it will be comparatively easy because I've observed you very carefully. You're obviously intelligent and honest and wonderful people.*

Trial Tr. 207 (emphasis added). The trial was completed as contemplated and after deliberating less than two hours the jury returned a guilty verdict. On appeal Stephens argues the highlighted portions of the quoted language were coercive. Because Stephens's trial counsel made no objection to the judge's statements, we again review only for plain error and again conclude there is none.

To reverse for coercion, a court must find that "in its context and under all the circumstances the judge's statement had the coercive effect attributed to it." *Jenkins v. United States,* 380 U.S. 445, 446, 85 S.Ct. 1059, 1060, 13 L.Ed.2d 957 (1965). We do not believe that was the case here. Read in context, the challenged remarks seem simply to have formed part of the judge's general explanation of what the jurors should expect during the rest of the trial, including the use of his unconventional verdict form. The closing comment appears to have been nothing more than a well-intentioned, if inappropriate, attempt to compliment the jurors. Given the context and brevity of these isolated remarks, we do not believe they were intended or interpreted to coerce a verdict or to lessen the impact of the remaining defense evidence. Nor is there any likelihood that they otherwise affected the outcome of the trial. Accordingly, we find no plain error in the judge's remarks that would warrant reversing Stephens's conviction. *See Lancaster,* 968 F.2d at 1254 (to be reversible, plain error must "affect[ ] a substantial right so that a miscarriage of justice would otherwise result) (citing *United States v. Zabalaga,* 834 F.2d 1062, 1066 (D.C.Cir.1987)).

 Spann too challenges as coercive several remarks by the trial judge as well as a supplemental deadlock charge. The rele-

vant circumstances may be summarized as follows.

On the second day of Spann's two-day trial, the judge reminisced within the jury's hearing about a civil case he had once tried that had lasted five years. In response to the prosecutor's hope that "this case won't take that long," the judge remarked: "No, we'll be done with this this afternoon, and they'll be done with it, too, because they've got better things to do." Trial Tr. 213. Later that day, immediately before instructing the jury, the judge informed them: "You might have noticed me visiting with the clerk for a minute. He's been kind enough to offer to escort you downstairs to get a soda, if you'd like to, before you hear the charge, and I don't think it will take you very long to finish your verdict after you have heard the charge and see the exhibits." Trial Tr. 309.

The jurors began deliberation shortly after 4:00 p.m. the same day and at 6:23 p.m. their foreman sent the judge a note stating that "this jury seemed to be deadlock [sic]." The judge then recalled the jury to the courtroom and dismissed it for the evening with the admonition:

I would suggest that you come in tomorrow morning at 9:30. We have to have all of you because the jurors, 13 and 14, have been excused, you know. We can't get along without you. We need a verdict, a decision from all 12 of you, and I am going to suggest something. I am going to suggest that you get in in the morning first thing by re-reading my jury instructions. Re-read them in their entirety. Do that first, if you'll be kind enough, and then discuss the case and tell me what your verdict is, one way or the other, and then we'll be done, alright?

Trial Tr. 316.

The following day the jury resumed deliberation without further direction from the judge and at about 1:50 p.m. sent him a second deadlock note stating: "We cannot reach a unanimous verdict." Then, over Spann's objection, the judge delivered the

"deadlock" charge which Spann now challenges.[3]

In urging reversal on account of coercion, Spann relies primarily on our en banc opinion in *United States v. Thomas*, 449 F.2d 1177 (D.C.Cir.1971). In *Thomas* we reversed the appellant's conviction because we found to be coercive statements the judge made to the jury after deadlock. We described the material circumstances there as follows:

> After the jury had deliberated about an hour, it sent to the judge a note advising that "[w]e, the jury, cannot come to an agreement." Thereupon, in the jury's absence, the judge, expressing the view that "[t]his is not a case we should have to retry," informed counsel of his intention to excuse the jurors for the day but to reconvene them on the following day for further deliberations; and this course the judge pursued, over vigorous objection by defense counsel. The jury was returned to the courtroom, whereupon the judge announced that he was "not going to declare a mistrial, and thereby require a retrial of this case before some other jury." Rather, he explained, he was excusing the jurors at that time to "come back tomorrow morning at 9:30 with a fresh mind and a night's sleep and seek to reach a verdict about the matter one way or the other." He added that he was "sure you ladies and gentlemen know we have a substantial backlog of work, and to spend another day before another jury retrying this case just doesn't make sense to me." He again admonished the jurors to "[s]ee if you can't decide and come to a verdict, think about it overnight individually."
>
> The jury reconvened at the appointed time. After about two hours of deliberations, interfused with an in-courtroom re-reading of [a witness's] testimony at its request, it returned a verdict finding appellant guilty on both counts of the indictment.

449 F.2d at 1180–81 (footnotes omitted). We then concluded that under the circumstances "the conviction must be reversed for actual, though undesigned, coercion of the jury," 449 F.2d at 1184, noting that "[t]he jury is coerced, the Supreme Court has held, when it is told that '[y]ou have got to reach a decision in this case,' and in much the same category is the admonition in this case that 'you ought to be able to agree on a verdict.'" *Id.* at 1182–83 (quoting *Jenkins v. United States*, 380 U.S. 445, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965)). Following the example of the Third and Seventh Circuits,[4] we further declared: "[I]n the exercise of our supervisory power over the administration of the law in this circuit, we adopt the [American Bar Association (ABA) ] standard for the guidelines which future renditions of *Allen*-type charges must abide [sic],[5] and the ABA approved instruction[6] as the vehicle for in-

---

**3.** The lengthy charge is set out in its entirety at Trial Tr. 330–33.

**4.** *See United States v. Fioravanti*, 412 F.2d 407 (3d Cir.), *cert. denied*, 396 U.S. 837, 90 S.Ct. 97, 24 L.Ed. 88 (1969); *United States v. Brown*, 411 F.2d 930 (7th Cir.1969), *cert. denied*, 396 U.S. 1017, 90 S.Ct. 578, 24 L.Ed.2d 508 (1970).

**5.** The adopted standard permits a court to give an instruction both before deliberation and after deadlock

> which informs the jury: (i) that in order to return a verdict, each juror must agree thereto; (ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment; (iii) that each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors; (iv) that in the course of deliberations, a juror should not hesi-

tate to reexamine his own views and change his opinion if convinced it is erroneous; and (v) that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

449 F.2d at 1184 n. 45 (quoting *American Bar Association, Standards Relating to Trial By Jury* § 5.4 (1968)).

**6.** The adopted instruction provides:

> The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous. It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the

forming jurors of their responsibilities in situations wherein judges decide to do so." *Id.* at 1187.

Given the guidance of *Thomas*, we cannot but find the above-quoted comments by the trial judge potentially coercive. Nevertheless, to reverse Spann's conviction on account of those remarks, to which trial counsel did not object, we must, as already noted, find plain error "affecting a substantial right so that a miscarriage of justice would otherwise· result." *Lancaster*, 968 F.2d at 1254. Here such a finding requires, at a minimum, a high probability that the judge's conduct adversely affected the defendant. *See Thomas*, 449 F.2d at 1184 (concluding that "[a]ll circumstances considered, we think those activities strayed beyond legitimate bounds, with a *substantial probability of prejudice* to the accused, and with the result that the judgment of appellant's conviction·cannot stand" and that "the conviction must be reversed for *actual*, though undesigned, coercion of the jury.") (emphases added). We find the circumstances here sufficiently, if fortuitously, different from those in *Thomas* to negate the likelihood of actual jury coercion or prejudice to Spann.

While the trial judge's comments, particularly those delivered after the first deadlock note, were inappropriate and probably proscribed under *Thomas*, they had no direct effect on the jury—that is, they did not break the jury deadlock or cause the guilty verdict. When the jurors resumed deliberation on the third day they again reached deadlock, despite the judge's admonition of the previous evening. Thus, we do not see how any of the cited remarks could have, by themselves, coerced the jury to return the guilty verdict so as to warrant reversal. *Cf. Thomas*, 449 F.2d at 1181 n. 19 (noting the court had previously, in rejecting a claim of coercion, observed that an overnight separation and recess between a supplemental deadlock charge and resumption of deliberation was "less coercive on the jury than a charge immediately followed by sequestration and deliberation") (citing *Fulwood v. United States*, 369 F.2d 960, 962–63 (D.C.Cir. 1967)). It was only after the judge delivered the supplemental charge in response to the second deadlock note that the jury finally reached a unanimous verdict. Thus, the coercion, if any, must lie in the language of that charge, albeit viewed against the backdrop of the earlier remarks. *See Jenkins v. United States*, 380 U.S. at 446, 85 S.Ct. at 1060 (determinative question is "whether *in its context and under all the circumstances of this case* the statement was coercive") (emphasis added).

As we have already observed, the *Thomas* opinion directed the district courts in this circuit to follow the American Bar Association's deadlock charge guidelines and to use its approved instruction. It is beyond dispute that the trial judge ignored the second prong of this directive, substituting a much longer charge of his own. Nevertheless, that deviation, while not to be condoned, does not require reversal so long as the substance of the judge's charge conformed to the ABA standard and there was no actual coercion. *Cf. United States v. Widgery*, 778 F.2d 325 (7th Cir.1985) (refusing to "bypass consideration of harmless error and reverse [the defendant's] conviction as an exercise of our 'supervisory power'" simply because judge violated circuit rule requiring jury notes to be shown to lawyers). We conclude that such is the case here.

In contrast to the court's earlier remarks, its deadlock charge was entirely unobjectionable. The court charged all of the elements required by the ABA standard,[7] including the one most significant to both the *Thomas* court and to Spann's appeal: "that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or

---

evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict. You are

not partisans. You are judges—judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case.

*Id.* n. 46 (quoting W. Mathes, *Jury Instructions & Forms for Federal Criminal Cases*, Instruction 8.11, 27 F.R.D. 39, 97–98 (1961)).

**7.** *See supra* note 5.

for the mere purpose of returning a verdict."[8] In fact, the charge's emphatic repetition of this admonition, combined with the absence of any new coercive language, seems to us to neutralize any possible lingering effect of the earlier improper remarks. *See* Trial Tr. 331 1. 1–4 ("[Y]ou should deliberate with your fellow jurors with the goal of returning a unanimous verdict, *without surrendering your individual judgment as to the facts.*"); *id.* at 331 1. 19 to 332 1. 2 (Now, *no one would ask, no one has a right to ask, certainly this court, this member of the court would be the last to suggest that any of you should surrender your individual judgment as to what the facts are,* but it is not inappropriate to suggest that you should retire for at least a brief period and consult again with one another with the idea of hopefully returning a unanimous verdict, *again I emphasize, if that is possible and consistent with your own judgment as to the facts.*"); *id.* 1. 11–12 ("*This court does not want to force any of you to surrender your individual judgments.*"); *id.* at 333 1. 1–5 ("[R]e-examine the evidence in the light of these brief remarks to see if you can decide the case unanimously, again, *provided you can do so conscientiously, without surrendering your individual judgment.*") (emphases added).

In sum, we find it unlikely that Spann's conviction resulted from any improper or coercive conduct by the court and therefore decline to reverse it.[9] Nevertheless, we remind the district court judges of the mandate delivered in *Thomas* and that failure to comply therewith may under other circumstances lead to reversal. We also caution against commenting within the jurors' hearing on a particular case's complexity or on the probable duration of either trial or deliberation. *Thomas* makes clear that, depending on the particular circumstances, such remarks may likewise require reversal.

For the preceding reasons, the appellants' convictions are

*Affirmed.*

WALD, Circuit Judge, concurring:

I concur in the panel opinion except as to the characterization of the anti-deadlock charge in Spann's trial as "unobjectionable," Panel opinion at 1518–19, free of "any new coercive language," *id.* at 1518–19, or "innocent," *id.* at 1519 n. 9. I find that the anti-deadlock charge, like the judge's earlier remarks, included potentially coercive language (including statements that juries "don't make mistakes," that no future jury would ever do a better job, and that the judge was "not convinced" that the jury would be "unable to return a unanimous verdict on the single question submitted to [it]") and that the jury's lengthy deliberation before the charge followed by its comparatively short deliberation after the charge reinforces the possibility of coercion. *See Lowenfield v. Phelps,* 484 U.S. 231, 240, 108 S.Ct. 546, 552, 98 L.Ed.2d 568 (1988). The saving grace for the charge was its conscientious, repeated insistence that a juror not surrender an honest conviction. This, in the final analysis, counterbalanced other possibly coercive statements and circumstances surrounding Spann's conviction.

---

8. *See* 449 F.2d at 1184 ("Communications from judge to jury are unduly constraining whenever they possess a substantial propensity for prying individual jurors loose from beliefs they honestly have."); Spann's Brief at 17–18.

9. Given the innocent, indeed curative, character of the deadlock charge, we attach no particular importance to the long deliberation before its delivery and the relatively brief time between delivery and verdict. *Cf. Lowenfield v. Phelps,* 484 U.S. 231, 240, 108 S.Ct. 546, 552, 98 L.Ed.2d 568 (1988) (verdict returned "soon after receiving [a] supplemental instruction ... suggests the possibility of coercion").