43 F.3d 712
 310 U.S.App.D.C. 61
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
UNITED STATES of America, Appellee,
v.
Dion A. JONES, Appellant.
 No. 93-3168.
 United States Court of Appeals, District of Columbia Circuit.
 Nov. 14, 1994.
 
 Before: BUCKLEY, RANDOLPH, and TATEL, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This cause came to be heard on appeal from the United States District Court for the District of Columbia and was briefed and argued by counsel. The issues have been accorded full consideration by the Court and occasion no need for a published opinion. See D.C.Cir.R. 36(b). For the reasons stated in the accompanying Memorandum, it is
 
 
 2
 ORDERED and ADJUDGED, by the court, that appellant's conviction under 21 U.S.C. Sec. 860(a) is affirmed, and his conviction under 21 U.S.C. Secs. 841(a) & 841(b)(1)(B)(iii) is vacated.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after the disposition of any timely petition for rehearing. See D.C.Cir.R. 41(a)(1).
 
 ATTACHMENT
 MEMORANDUM
 
 4
 Dion Jones appeals from his convictions of possession with intent to distribute five grams or more of cocaine base in violation of 21 U.S.C. Secs. 841(a) & 841(b)(1)(B)(iii), and distribution of the same within 1,000 feet of a school in violation of 21 U.S.C. Sec. 860(a). We affirm Jones' Sec. 860(a) conviction and vacate his Sec. 841 conviction, which is a lesser included offense. See United States v. Scott, 987 F.2d 261, 266 (5th Cir.1993).
 
 
 5
 There was more than sufficient evidence for a reasonable juror to find Jones guilty as charged. Jackson v. Virginia, 443 U.S. 307, 318-19 (1979). An undercover officer testified that on November 12, 1992, he drove to Northeast Washington, D.C., to buy drugs from a known drug dealer--Jones' brother Kevin McKinley. The officer saw Jones and asked if he had seen his brother. He told Jones he wanted to buy a half-ounce of cocaine. According to the officer, Jones told him he did not have the drugs, but he could get them. Jones, accompanied by another brother, Eric McKinley (who was tried with Jones), and a young man identified only as "Scoop," took the officer to the McKinleys' apartment. While the officer waited in his car, the three men went inside the building. Upon returning, Jones approached the car, got in, and produced a ziplock bag containing three large rocks of crack cocaine. The officer bought the crack for $500 cash, purchasing it directly from Jones. The jury listened to a tape recording of the transaction.[1] The officer's testimony, the recording, and the laboratory analysis showing that the substance was cocaine base, enabled a reasonable juror to convict Jones of possession with intent to distribute.
 
 
 6
 That Jones committed his offense within 1,000 feet of a school, as Sec. 860(a) provides, was also sufficiently established. Officer Joseph Sopata testified that, using a calibrated measuring wheel, he twice measured the distance from the area where the drug sale took place to the Phelps Career Development Center. The measurement on which the charge was based, 936 feet, was the longer of the two. Sopata pushed the wheel "around buildings, over fences, [and] through ... alleys" making his measurement undoubtedly longer than if he had proceeded in a straightline.[2] While he did not specifically describe the spot on the school property from which he measured, a rational juror could certainly conclude that when Sopata said that he measured "to Phelps Career Development," the spot was on the school property.[3] Similarly, a rational juror also could have concluded that when Sopata said he measured "from the area of 2018 Maryland Avenue," he measured from the point of the offense.
 
 
 7
 Sopata also testified that he was familiar with Phelps, had been to the school, which was a "vocational school" for ninth through twelfth graders, and had confirmed its school status with a "phone call." The defense raised no objection, and his testimony remained uncontradicted. A reasonable juror therefore could conclude that Jones committed the offense within 1,000 feet of a "vocational school." See, e.g., United States v. Campbell, 935 F.2d 39, 45 (4th Cir.), cert. denied, 112 S.Ct. 348 (1991); United States v. Panton, 846 F.2d 1335, 1337 (11th Cir.1988).
 
 
 8
 Jones argues that the following portion of the court's jury instructions coerced the jury into returning a verdict of guilty:
 
 
 9
 If you fail to reach a verdict the parties will be put to the expense of another trial and once again will have to endure the mental and emotional strain of a trial.... but do not surrender your honest conviction as to the weight or effect of the evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.
 
 
 10
 These remarks were inconsistent with this court's "supervisory" decision in United States v. Thomas, 449 F.2d 1177, 1187 (D.C.Cir.1971) (in banc). The first three lines did not conform with the American Bar Association's recommendations, emphasizing as they did the desirability of avoiding a retrial. While the potential for undue coercion existed, the issue remains whether the charge actually had that effect. In other words, did the charge create an "urging ... so great as possibly to exert a coercive influence upon the jury"? United States v. Spann, 997 F.2d 1513, 1518 (D.C.Cir.1993); Thomas, 449 F.2d at 1181, 1184. We hold that it did not. First, the charge here, unlike the coercive instructions in Thomas, was not given to a deadlocked jury. A deadlocked jury, with one or more hold-outs, is more susceptible to undue influence or coercion than a jury about to begin its deliberations. See, e.g., Winters v. United States, 317 A.2d 530, 532 (D.C.1974). In Thomas, we were concerned with a judge using Allen instructions[4] to coerce a holdout juror to join the majority. The Thomas court took aim at the portion of the Allen instructions discussing a minority juror's obligation to join the majority--an instruction not given in this case. Thomas, 449 F.2d at 1185. Second, the jury was unable to reach a unanimous verdict on either of the two charges against Jones' codefendant. It would hardly make sense to say that the jury instructions "coerced" the jurors into reaching a guilty verdict with respect to Jones, but the same instructions somehow failed to coerce the jurors with respect to the codefendant. Third, other portions of the charge repeatedly informed the jurors of their duty to "not surrender your honest conviction ... solely because of the opinions of your fellow jurors, or for the mere purpose of returning a verdict," to base their verdict on "the considered judgment of each juror," and to have each juror "decide the case for [herself]." As in Spann, the protective portions of the instructions ordering the jurors to remain true to their convictions counterbalanced and defused the potentially coercive instructions. Spann, 997 F.2d at 1519.
 
 
 11
 We reject Jones' further contention that the district court erred in not inquiring further when the jurors sent out a note stating that one of the jurors had slept through the presentation of much of the evidence. The court read the note into the record, proposed that the jury should continue its deliberations, and asked defense counsel and the prosecutor for their positions. Jones' counsel answered "I have no problem with the response." Jones thereby waived his claim of error on appeal. At all events, the court properly exercised its discretion and did not commit plain error.
 
 
 12
 The district court properly treated Jones' involvement in a prior drug sale as "relevant conduct," which increased his sentence. According to Jones' presentencing report, on January 13, 1993, he was invovled in the sale of twenty-two grams of bogus crack cocaine to an undercover police officer. As Jones concedes, a drug transaction that is planned or negotiated but does not go through is "relevant conduct" sufficient to increase a sentence pursuant U.S.S.G. Sec. 2D1.1, Application Note 12.[5] The only issue is whether Jones knew the "crack" was bogus at the time of the transaction. See U.S.S.G. Sec. 2D1.1, Application Note 12.
 
 
 13
 Because Jones challenged factual representations in his presentencing report, the district court made a finding to resolve the dispute and we see no basis for upsetting it. Under Rule 32 of the Federal Rules of Criminal Procedure, the district court has discretion to hear evidence "relating to any alleged factual inaccuracy contained in [the presentencing report]." FED.R.CRIM.P. 32(c)(3)(A). The court chose not to take additional testimony after Jones said he would testify that he knew the crack was bogus and the government said Special Agent Martha Dixon of the FBI, who interviewed Jones, would testify that Jones told her he thought the crack was real. Based on the proffered testimony, the strong likelihood that the actual testimony would be no different, and the court's previous doubts about Jones' credibility, the court determined that Jones intended to sell real crack cocaine and only later learned that it was bogus. The presentencing report also indicated that Jones had told the parole officer he thought the crack cocaine was real. In sentencing, the district court may base its decision on evidence presented during the trial, including the demeanor of the witnesses. United States v. Grayson, 438 U.S. 41, 50 (1978). Jones' credibility was tested at the trial, and he was found to be unbelievable. Special Agent Dixon also testified and the court had an opportunity to assess her credibility. The court properly relied on Jones' and Dixon's demeanor at trial in evaluating the parties' proffers and determining the appropriate sentence.
 
 
 14
 Accordingly, we affirm appellant's conviction under 21 U.S.C. Sec. 860(a), and vacate his conviction under 21 U.S.C. Secs. 841(a) & 841(b)(1)(B)(iii), which is a lesser included offense.
 
 
 
 [1]
 Jones did not dispute the officer's testimony until the point of the actual hand-off of the drugs. Jones testified that at that point, "Scoop," not Jones, made the actual sale
 
 
 [2]
 While we need not decide at this time the merits of the straight-line method of measurement for the purposes of 21 U.S.C. Sec. 860(a), it has been accepted by various circuits and would necessarily equate with a shorter distance. See, e.g., United States v. Clavis, 956 F.2d 1079 (11th Cir.1992), cert. denied, 113 S.Ct. 1619 (1993); United States v. Robles, 814 F.Supp. 1249 (E.D.Pa.), aff'd, 8 F.3d 814 (3d Cir.1993)
 
 
 [3]
 Section 860(a) applies to certain crimes that take place "within one thousand feet of the real property comprising a public or private ... school," not the actual building or buildings
 
 
 [4]
 So named after receiving approbation by the Supreme Court in Allen v. United States, 164 U.S. 492 (1896)
 
 
 [5]
 Application Note 12 to Sec. 2D1.1 of the Sentencing Guidelines reads:
 In an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount. However, when the court finds that the defendant did not intend to produce and was not reasonably capable of producing the negotiated amount, the court shall exclude from the guideline calculation the amount that it finds the defendant did not intend to produce and was not reasonably capable of producing.