**UNITED STATES of America,**

v.

**Desi L. GREEN, Defendant.**

**Crim. A. No. 91–35(CRR).**

United States District Court, District of Columbia.

Dec. 19, 1994.

Rachel Adelman Pierson, Asst. U.S. Atty., Washington, DC, argued, for plaintiff. With her on the brief were, Eric Holder, Jr., U.S. Atty., and John Facciola, Asst. U.S. Atty., Washington, DC, for U.S.

W. Gary Kohlman of Kohlman, Rochon & Roberts, Washington, DC, argued, and wrote the brief, for defendant.

494

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

### INTRODUCTION

Before the Court is the Defendant's Motion, pursuant to 28 U.S.C. § 2255, to Vacate Sentence and Order for a New Trial and the Government's Opposition thereto. Upon a careful review of the papers, the applicable law, the entire record herein, and the oral arguments of Counsel, the Court shall deny the Defendant's Motion.

On April 16, 1991, the Defendant was tried and convicted of one count of distribution of PCP. Defendant was then sentenced on June 13, 1991, to a term of 163 months of imprisonment. Subsequently, the Defendant filed a notice of appeal. The appeal was stayed pending this Court's decision on the Defendant's Motion, now before the Court, which challenges his criminal conviction based upon the alleged ineffective assistance of trial counsel.

In his Motion, Defendant alleges that trial Counsel committed four errors: (1) failure to object to evidence of a drug sale the Defendant was not involved in; (2) failure to object to the admission of statements that did not meet the co-conspirator exception to the rule on hearsay evidence; (3) failure to object to the trial Court's anti-deadlock jury instruction; and (4) failure to object when the Court overheard jury deliberations and decided to conduct a recess on that basis. According to the Defendant, these four alleged errors show that trial Counsel ineffectively assisted him at trial.

The Government, in its Opposition, denies that trial Counsel was ineffectively rendered.

### FACTS

On January 4, 1991, the Defendant and Jeffrey Harris were arrested in a Safeway parking lot in Washington, D.C. after they attempted to sell one gallon of phencyclidine ("PCP") to undercover agents of the Drug Enforcement Administration ("DEA").

The evidence at trial concerned three transactions between the Defendant, Jeffrey Harris, and undercover DEA agents involved in the sale of PCP.

In the first transaction, the evidence established that Jeffrey Harris sold 16 ounces of PCP to the DEA agents on December 7, 1990 outside his home in Washington, D.C. An informant arranged the transaction and the price. After arriving at Jeffrey Harris' house, the agents attempted to negotiate a lower price but Mr. Harris responded that "he didn't know. He had to check with his man, because he gets it from another guy. He got to negotiate with his boy ..." (R. at 36, 229.)

In the second transaction, the evidence showed that the Defendant and Jeffrey Harris sold 32 ounces of PCP to the DEA agents. After the agents arrived on the scene, the informant told the DEA agents that Mr. Harris had said that "his man wasn't there yet ... he'd be back in about ... ten minutes." (R. at 42, 241.) The DEA agents noticed Defendant driving a white Toyota very slowly around the area near Mr. Harris' house. A few minutes later, Mr. Harris came outside, walked past the agents' car, but did not stop, telling the agents "my man is on his way" as he walked out to the street. (R. at 42.) The Defendant subsequently pulled over with the engine running, and Mr. Harris walked over to the car. Defendant pointed at the agents and Mr. Harris turned to look in their direction. Mr. Harris conversed with the Defendant. Defendant then handed a brown paper bag to Mr. Harris. Mr. Harris returned to the DEA agents' car carrying the bag that was discovered to have contained two bottles of liquid PCP. Defendant drove off, but then appeared approximately five minutes later. The DEA agents then asked Mr. Harris if he would "go talk to his boy" to negotiate the price for the purchase of a gallon of PCP. Mr. Harris then appeared to carry on a conversation with the driver of the white Toyota. Mr. Harris returned to the DEA agents' car and told the agents that "his boy couldn't lower the prices because the guy that he gets it from, the prices go up and down and he couldn't guarantee lowering the prices on anything." (R. at 47, 244.)

On January 4, 1991, the third transaction, the evidence showed that the Defendant and Mr. Harris were apprehended while attempt-

ing to sell a gallon of PCP to the undercover agents in the parking lot of a Safeway grocery store. The meeting was prearranged through a telephone call between Mr. Harris and the informant. When Mr. Harris was late, the DEA agents paged him. Mr. Harris then indicated that he would contact his "boy," who would pick him up, and the two of them would be there in 20 minutes. (R. at 59, 253–54.) Approximately 20–25 minutes later, Defendant and Harris arrived in a blue Toyota driven by the Defendant and parked two or three parking spaces away from the DEA agents' car. Mr. Harris approached the agents, got inside their car and asked whether they had the money. Defendant then moved the Toyota behind the DEA agents' van. Mr. Harris signaled the Defendant to return to the parking spot parallel to the van, which the Defendant did. Mr. Harris opened the passenger door, leaned inside and retrieved a white plastic bag containing a large jug with yellow liquid in it. After bringing the jug to the DEA agents, Mr. Harris was arrested. Defendant attempted to drive away but his escape was blocked. Defendant jumped from the Toyota and began to run but was apprehended by the DEA agents. Defendant had $3,900 and a pager on his person at the time of his arrest.

A detective then transported the Defendant to the DEA office. During the drive, the Defendant indicated that he had knowledge of other individuals involved with PCP, where he had seen large quantities of PCP, and where he had obtained the PCP involved in his arrest.

## DISCUSSION

### I. THE COURT SHALL DENY THE DEFENDANT'S MOTION BECAUSE THE REPRESENTATION OF THE DEFENDANT BY COUNSEL WAS NEITHER DEFICIENT NOR PREJUDICIAL IN EACH OF THE FOUR INSTANCES CITED BY THE DEFENDANT.

■ A convicted Defendant's claim of ineffective assistance of trial counsel has two components, both of which must be satisfied for the Defendant to prevail. First, the representation of the Defendant must have been deficient to the extent that the attorney's errors were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), *reh'g denied,* 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984); *United States v. Lam Kwong-Wah,* 924 F.2d 298, 308 (D.C.Cir. 1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 287, 121 L.Ed.2d 213 (1992); *United States v. Poston,* 902 F.2d 90, 98 (D.C.Cir.1990). In analyzing this first component, the court is to examine the particular circumstances of the case to determine the reasonableness of the Defendant's representation. *Strickland,* 466 U.S. at 688, 690, 104 S.Ct. at 2064, 2066. However, with respect to this component, there is a "strong presumption" that counsel's conduct was reasonable and that the challenged action was a sound trial strategy. *Strickland,* 466 U.S. at 688, 690, 104 S.Ct. at 2064, 2066; *Nix v. Whiteside,* 475 U.S. 157, 165, 106 S.Ct. 988, 993, 89 L.Ed.2d 123 (1986).

The second component that the Defendant must show is that the alleged deficiency of counsel prejudiced the Defendant. *Strickland,* 466 U.S. at 668, 687, 104 S.Ct. at 2064, 2066; *United States v. Lam Kwong-Wah,* 924 F.2d 298, 308 (D.C.Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 287, 121 L.Ed.2d 213 (1992); *United States v. Poston,* 902 F.2d 90, 98 (D.C.Cir.1990). In this case, the Court finds that based upon a review of the papers, the applicable law, and oral argument, the representation of the Defendant by Counsel was neither deficient nor prejudicial. Therefore, the Defendant's Motion to vacate his sentence and order for a new trial shall be denied.

### A. The Court Finds That Trial Counsel Made A Sound Decision Not To Object To Evidence Concerning The December 7 Transaction.

■ Defendant first claims that his Counsel erred in failing to object to the introduction of evidence concerning the December 7, 1990 drug sale in which Jeffrey Harris, alone, sold PCP to DEA agents. However, Counsel

was not deficient in failing to object to this evidence.

Counsel's strategy was to convince the Jury that the Defendant was not involved in any subsequent drug sales because Mr. Harris operated independently of the Defendant. Defense Counsel actually relied on the December 7 transaction to illustrate his point. As stated by trial Counsel:

> I made a strategic decision to highlight the activities of Jeffrey Harris including the December 7, 1990 transaction in order to show that Harris acted alone without the cooperation of defendant and did not need defendant in order to engage in the transactions which formed the basis of the government's case.

(Aff. of Idus J. Daniel, ¶ 3 (1994)). In fact, in his argument at trial, Defense Counsel stated, with respect to the December 7 transaction, that Jeffrey Harris transferred the drugs without hesitation and without stating that he had to check with the Defendant first. *See* (R. at 21.) Consequently, trial Counsel attempted to use the December 7 sale to show that Harris operated independently of the Defendant. Since trial Counsel's strategy was to rely on the December 7 sale to show that Mr. Harris acted alone without the Defendant's help, Counsel was not deficient in failing to object to the evidence of the December 7, 1990 transaction.

**B.** ***The Court Finds That The Defendant Was Not Prejudiced By Counsel's Failure To Object To The Introduction Of The Statements Made by Jeffrey Harris.***

Defendant's second contention is that Counsel was deficient in failing to object to the Government's introduction of statements made by Jeffrey Harris under the co-conspirator exception to the rule against hearsay. In this instance, Counsel, again, was not deficient.

Under the co-conspirator exception to the hearsay rule, statements made by a co-conspirator are admissible. *See* Fed.R.Evid. 801. During the trial of the case, this Court specifically found the existence of a conspiracy, which subsequently allowed the state-

ments made by Jeffrey Harris to be admitted. The Court stated:

> Of course, there's been evidence that would support a conspiracy charge. There can't be any question about that in this case.... He's saying as a matter of the Rules of evidence, that since there is no conspiracy charge, I must ... make a finding to allow this other evidence in, which I apparently did not do, to make this evidence properly admissible. The court so finds.

(R. at 419, 421.) Since the Court found the existence of a conspiracy, Mr. Harris' statements were admissible. Therefore, Defense Counsel's failure to object to the admission of the statements did not prejudice the Defendant.

**C.** ***The Court Finds That The Defendant Was Not Prejudiced By Defense Counsel's Failure To Object To The Court's Anti-Deadlock Instruction.***

Defendant's third argument is that Counsel erred in failing to object to the Court's anti-deadlock instruction. The Court finds that Counsel's failure to object was not prejudicial to the Defendant.

■ In analyzing the appropriateness of an anti-deadlock instruction, this Circuit has upheld non-coercive instructions. *United States v. Spann*, 997 F.2d 1513, 1518 (D.C.Cir.1993). A non-coercive instruction is one in which the Court emphasizes that a juror should not surrender his own conviction as to the weight of the evidence. *See Id.* at 1518–19. To determine if an instruction is coercive, the instruction is examined in the context and circumstances it was given. *Id.* at 1516 (quoting *Jenkins v. United States*, 380 U.S. 445, 446, 85 S.Ct. 1059, 1060, 13 L.Ed.2d 957 (1965)).

■ In this case, the Jury deliberated for about six hours before sending a note which stated that they could not reach a verdict. After denying defense Counsel's Motion for a mistrial, the Court gave the following anti-deadlock instruction [1]:

1. However, in the instant Motion, Defense Counsel merely cited to the specific statements by the

... I must tell you that absolute certainty cannot be attained or expected in any case. No one would ask, certainly not this member of the court, a juror or jurors to surrender their individual judgment as to what the facts are, but it is not inappropriate to suggest that all of you should consult with one another with the idea of reaching a unanimous verdict, if that is possible, consistent with your own judgment as to the facts....

It is desirable, ladies and gentlemen, that a verdict be returned from 12 true and tried citizens such as yourselves. On the other hand, if you can't decide it, then the case will have to be retried before another jury selected in the same manner....

It is also clear to the court, at least, that it is doubtful if there will ever be more clearer evidence produced by one side or the other, and with all of these factors and considerations in mind, I would hope that you would be willing to retire for a period of time and re-examine the evidence in the light of these instructions, the law, and to see if you can decide the case unanimously, provided you can do so conscientiously, as I said earlier, without surrendering your individual judgment.

Just listen to each other with a disposition to be convinced. Listen to each other with a disposition to be convinced, and if you do that, I believe you probably can reach a unanimous verdict. But if you don't, you will still have the respect of this court, and that goes for each and all of you.... Maybe if you go back and read the court's instructions, just start anew, read the instructions again and re-evaluate the situation, listen to the others and see if you can't, consistent with your individual judgment, reach a unanimous conclusion. You don't want anything to impair your ability to reach a total and unanimous decision.

(R. at 440–442.)

The Defendant has argued, incorrectly, that the above Instruction was prejudicial to

him in light of this Circuit's decision in *United States v. Thomas*, 449 F.2d 1177 (D.C.Cir. 1971) (en banc), which found that a lower court's anti-deadlock instruction improperly coerced the jury. The *Thomas* court was particularly troubled by the language in the lower court's instruction that stated, that "[t]his is not a case we should have to retry," and that the jury was to "reach a verdict about the matter one way or the other." *Thomas*, 449 F.2d at 1180–81 (internal citations omitted.)

However, *Thomas* is inapplicable because the Court in this case did not use any of the objectionable language that was used in *Thomas*. The Court never instructed the Jury that this case should not be retried or that the Jury must reach a verdict. Thus, this case is distinguishable from *Thomas*.

Instead, this case is like *United States v. Spann*, 997 F.2d 1513, 1518 (D.C.Cir.1993), in which the Court of Appeals upheld this Court's anti-deadlock instruction. In that case, the Court of Appeals reasoned that this Court's repeated emphasis that no juror was to surrender his honest conviction had a "curative" effect on any potentially coercive language within the instruction. *Spann* 997 F.2d at 1518–19. In *Spann*, the Court gave, in part, the following anti-deadlock instruction:

[Y]ou should deliberate with your fellow jurors with the goal of returning a unanimous verdict, *without surrendering your individual judgment as to the facts*. Now, *no one would ask, certainly this court, this member of the court would be the last to suggest that any of you should surrender your individual judgment as to what the facts are*, but it is not inappropriate to suggest that you should retire for at least a brief period and consult again with one another with the idea of hopefully returning a unanimous verdict, *again I emphasize, if that is possible and consistent*

Court that were allegedly coercive. Despite the legal standard which requires that an instruction is to be analyzed in the context and circumstances it is given, Counsel did not cite to the entire relevant portion of the Court's instruction.

The Court notes its disdain for such a practice. Such a practice is well below the standards of professionalism which are observed in, and practiced before, this Court.

**498**

*with your own judgment as to the facts.... This court does not want to force any of you to surrender your individual judgments....* [R]e-examine the evidence in light of these brief remarks to see if you can decide the case unanimously, again, *provided you can do so conscientiously, without surrendering your individual judgment.*

*United States v. Spann,* 997 F.2d 1513, 1519 (D.C.Cir.1993) (emphasis in original).

In this case, the Court's Instruction to the Jury, as in *Spann* did not in any way "coerce" the Jury. *See* (R. at 441–442.) Indeed, the language in this case is virtually identical to the language in *Spann.* No less than three times the Instruction in this case stated that the jurors were supposed to reach a verdict that is consistent with their individual judgment. In fact, the Instruction specifically stated that the judge was not, in instructing the Jury, asking that individual jurors surrender their judgment on what the facts are in the case. Since this Circuit held in *Spann* that the Court's use of such language has a "curative" effect on any potentially coercive language, the Court's Instruction was valid. Therefore, Defense Counsel's failure to object did not prejudice the Defendant.

**D.** ***The Court Finds That Counsel Was Not Deficient In Failing To Object When The Court Permitted The Jury To Continue Deliberating After Hearing That The Jury Was Discussing The Case While Passing The Jury–Room Door.***

Defendant's final objection is that his attorney was deficient in failing to move for a mistrial after the Court declined to dismiss the Jury. The Court finds that Counsel's failure to object was not deficient or prejudicial to the Defendant.

■ On April 15, 1991, the Court decided to excuse the Jury until the next day. (R. at 443–44.) Defense Counsel then moved for the Jury to be discharged. The Court stated the following:

[J]ust coming past the door, I could hear them discussing the case and I don't know

whether they're—it's not appropriate for me to even try to hear. I don't know what they're doing, but I don't think (pause)—it's not (pause)—they haven't been out that long.

(R. at 444.) Regarding the privacy and secrecy of the jury, a Defendant must show that the court overheard a snippet of the jury's deliberations and that he suffered prejudice. *See United States v. Olano,* —— U.S. ——, ——, 113 S.Ct. 1770, 1780, 123 L.Ed.2d 508 (1993).

■ In this case, the Court merely told Defense Counsel, as indicated above, that as the Court passed through the 7'9" × 4'11" anteroom, located between the hallway, the courtroom, and the jury room, the Court could hear the Jury deliberate and talk to each other. The Court never heard what the Jury said about the case, one way or another, and so informed Counsel. (R. at 444.) The comments the Court made amount to nothing more than a recognition that the Jury was performing its task. How this could prejudice the Defendant is beyond this Court's imagination and is a frivolous and almost unconscionable effort by Counsel to make something out of nothing. Perhaps the architect who is designing the next courthouse can build it in such a way to allow ingress and egress to the courtroom so a judge will not pass the jury room door, even for a few seconds, as was the case here.

Thus, the Court finds that defense Counsel was not deficient in failing to move for a mistrial.

***CONCLUSION***

For the foregoing reasons the Court finds that, pursuant to 28 U.S.C. § 2255, the Motion, files, and records of this case conclusively show that the Defendant is not entitled to relief. Therefore, the Court shall deny the Defendant's Motion to vacate sentence and order for a new trial.